## DEBORAH CARPENTER *versus* JOHN HEARD *et al.*

A testator bequeaths to his granddaughter J. C. L. a sum of money, to be paid to her when she arrives at twenty-one or is married; and directs that if she shall die under twenty-one *and* unmarried, the legacy shall be paid to his other granddaughters. J. C. L. died in the lifetime of the testator, unmarried, but *after* attaining twenty-one. It was *held* that the other granddaughters took nothing under the bequest.

In the case of a bequest to J. C. L. and the other granddaughters in like form, except that the conditional words were, "if J. C. L. shall die before she arrives at the age of twenty-one years *or* is married," it was *held* that the other granddaughters took nothing under the bequest.

THIS was an appeal from a decree of the probate court sanctioning a payment made by the appellees as executors of the will of Thomas Lee, to Mary Ann Lee, and the representatives of Louisa and Georgiana Lee.

The will was made on the 19th of August, 1825; and it contains, among others, the following bequests.

" I give and bequeath to my granddaughters Mary Ann Lee, Louisa Lee and Georgiana Lee, the children of my late son George G. Lee, deceased, the sum of 17,000 dollars, to be equally divided between them; and if either of them shall die before me without leaving a child or children, her share shall go and be paid to the survivors or survivor."

" I give and bequeath unto my granddaughter Judith Coleman Lee, daughter of my late son William Coleman Lee deceased, the sum of 17,000 dollars, to be paid to her when she arrives at the age of twenty-one years or is married, whichever shall first happen; and my will further is, and I do order and direct, that if my said granddaughter Judith Coleman Lee shall die under twenty-one years of age *and* unmarried, that the said legacy heretofore bequeathed to her, shall go and be paid to my said granddaughters the said Mary Ann Lee, Louisa Lee and Georgiana Lee; and if either of them be then dead, to the survivors or survivor of them, and to the child or children, if any, of such deceased granddaughter, the child or children of such deceased granddaughter to take his, her or their mother's share only. And I do hereby direct my executors hereinafter named, to retain in their hands so much of

38 *

my personal estate as shall be sufficient to pay the said sum of 17000 dollars when the same shall become due and payable as aforesaid."

" I give, devise and bequeath all the rest, residue and re mainder of my estate, real, personal and mixed, as follows, to wit : — One half part thereof to my granddaughters the said Mary Ann Lee, Louisa Lee and Georgiana Lee, their heirs and assigns for ever ; and if the said Mary Ann, Louisa and Georgiana, or either of them, shall die before she or they arrive at twenty-one years of age, and unmarried, then my will is, that her or their share so dying shall go to the survivors or survivor, her or their heirs and assigns for ever ; and the other half part thereof I give, bequeath and devise to my grand-daughter Judith Coleman Lee, her heirs and assigns for ever ; but if said Judith Coleman Lee shall die before she arrives at the age of twenty-one years *or* is married, then I give, be-queath and devise said other half part of said rest, residue and remainder of my estate as aforesaid, to my said granddaughters the said Mary Ann, Louisa and Georgiana, and to the survi-vors and survivor of them, their heirs and assigns for ever."

The testator died January 11, 1830, and his will was proved in March following.

Judith Coleman Lee, having attained the age of twenty-one years, died, unmarried, in the lifetime of the testator.

Besides the children of his son George G. Lee, the testa-tor had two daughters who survived him, the appellant and Louisa Waterhouse, to both of whom he made large bequests. At the date of the will the daughters had no issue, nor was it probable that they ever would have any.

The question was, whether the appellant was entitled to a share of the legacies bequeathed to Judith Coleman Lee, or whether the whole amount of them was rightfully paid over by the executors to Mary Ann Lee and the representatives of Louisa Lee and Georgiana Lee.

*S. Hubbard* and *Aylwin* for the appellant.    Judith C. Lee having attained the age of twenty-one ; the bequest over, of the 17,000 dollars, did not take effect.    Her dying under age and unmarried was a condition precedent, and not a conditional limitation.    *Doo* v. *Brabant*, 4 T. R. 706 ;   *S. C.* 3 Bro.

C. C. 393 ; *Calthorpe* v. *Gough*, ibid. note, and 4 T. R. 707, note ; *Holmes* v. *Cradock*, 3 Ves. 317 ; *Parsons* v. *Parsons*, 5 Ves. 578 ; *Humberstone* v. *Stanton*, 1 Ves. & Beame, 385 ; *Williams* v *Iones*, 1 Russell, 517.

The residuary clause must receive the same construction as the other, for in the conditional words, " if Judith C. Lee shall die before she arrives at the age of twenty-one years *or* is married," *or* means *and*. *Fairfield* v. *Morgan*, 5 Bos. & Pul. 38 ; *Denn* v. *Kemeys*, 9 East, 366 ; *Jackson* v. *Blanshan*, 6 Johns. R. 54 ; *Ray* v. *Enslin*, 2 Mass. R. 554 ; *Holmes* v. *Holmes*, 5 Binn. 252.

*J. Pickering* and *Ashmun* for the appellees. In Fearne, (7th edit.) 509, it is laid down, that "where a devise is made after a preceding executory or contingent limitation, or is limited to take effect on a condition annexed to any preceding estate, if that preceding limitation or contingent estate never should arise or take effect, the remainder over will nevertheless take place, the first estate being considered only as a preceding limitation, and not as a preceding condition to give effect to the subsequent limitation." This is supported by the cases of *Scatterwood* v. *Edge*, 1 Salk. 229 ; *Jones* v. *Westcomb*, 1 Eq. Cas. Abr. 245 ; *S. C.* Prec. in Ch. 316 ; *Gulliver* v. *Wickett*, 1 Wils. 105 ; *Frogmorton* v. *Holyday*, 3 Burr. 1624 ; *Avelyn* v. *Ward*, 1 Ves. sen. 420 ; *Statham* v. *Bell*, Cowp. 40 ; *Bradford* v. *Foley*, Doug. 63 ; *Meadows* v. *Parry*, 1 Ves. & Beame, 124 ; *Parry* v. *Boodle*, 1 Cox, 183 ; *Pearsal* v. *Simpson*, 15 Ves. 29. In the case at bar the legacy to Mary Ann &c. is to take effect upon a condition annexed to the preceding bequest to Judith C. Lee, and her bequest being defeated, the limitation over takes effect, within the principle above stated. See also *Jackson* v. *Durland*, 2 Johns. Cas. 314 ; *Miller* v. *Warren*, 2 Vern. 207 ; *Ledsome* v. *Hickman*, ibid. 611 ; *Willing* v. *Baine*, 3 P. Wms. 115 ; *Darrel* v. *Molesworth*, 2 Vern. 378. The words "but if" are ordinarily words of condition, but the cases cited show that they are not to be so construed in this bequest. The decisions in the cases of *Doo* v. *Brabant*, *Calthorpe* v. *Gough*, and *Williams* v. *Jones*, may perhaps be reconciled with former cases there being two remainders over, not in succession

Carpenter
v.
Heard.

but in the alternative ; but otherwise they are inconsistent with the law as previously settled, and having taken place since the American revolution, they cannot be regarded as authority in this country. *Packard* v. *Richardson*, 17 Mass. R. 133 ; *Cathcart* v. *Robinson*, 5 Peters's Supr. C. R. 280 ; *Baring* v. *Reeder*, 1 Henn. & Munf. 158. The case of *Cumberstone* v. *Stanton*, 1 Ves. & Beame, 385, is adverse to the position we take, but it is in opposition to *Avelyn* v. *Ward* and other cases above cited, and is not law. Sir *William Grant* was not aware that he was contradicting former decisions. In *Murray* v. *Jones*, 2 Ves. & Beame, 313, he recognises the principle we lay down, and cites *Jones* v. *Westcomb*. In the case of a devise to an expected child, and if it die before attaining twenty-one years, then over, it is settled that the contingency is not a condition, but a conditional limitation to the estate to which it is annexed. But it can make no difference whether the child is expected to be born or is actually born. *Gulliver* v. *Wickett*, 1 Wils. 105 ; *Statham* v. *Bell*, Cowp. 40 ; *Meadows* v. *Parry*, 1 Ves. & Beame, 124 ; *Murray* v. *Jones*, 2 Ves. & Beame, 313. The real intention of the testator, which is the governing principle in the construction of wills, is manifest. He gives legacies to his two daughters, who had no issue and probably never would have, and to the two branches of his grandchildren. He evidently looks forward to the grandchildren as the only descendants to represent him, and he intends that if Judith C. Lee should not take and transmit her legacy, it should go to the other grandchildren. *Lowe* v. *Huntingtower*, 4 Russell, 532.

Oct. 17th,
1833.

PUTNAM J. delivered the opinion of the Court.* The question is, whether the appellant shall recover as an heir at law, or the surviving grandchildren shall take as legatees.

The right of the heir is clear, and not to be set aside, unless the testator has manifested a clear intent to take it from the heir and give it to a legatee. We are to ascertain whether there is such an intent manifested in the case at bar. It is perfectly clear, that if Judith C. Lee had lived until she became twenty-one years of age, or if she had been married be-

---

* *Shaw* C. J. did not sit in the case.

fore she became of that age, the testator intended she should have the money bequeathed to her. It was given expressly " to be paid to her when she arrives at twenty-one years of age or is married, whichever shall first happen." But she died after she became twenty-one years of age, and unmarried, in the lifetime of the testator. If there were nothing further said in the will, this would be a lapsed legacy, and should be distributed accordingly. But the testator proceeds to make the bequest upon which the appellees rely, in the words following ; — " My will further is, that if my granddaughter Judith Coleman Lee shall die under twenty-one years of age, *and* unmarried, the said legacy heretofore bequeathed to her shall go and be paid to my granddaughters, the said Mary Ann" &c.

As has been said, Judith C. Lee did not die under, but over the age of twenty-one years ; but she was unmarried. In the residuary clause he bequeathed one half of the rest, residue, &c., to the other grandchildren, with cross remainders between them, and the other half to Judith C. ·Lee for ever, and then says, " But if said Judith C. Lee shall die before she arrives at the age of twenty-one years *or* is married, then I give, bequeath and devise said other half part of said rest, residue and remainder, &c., to my said granddaughters Mary Ann," &c.

It is not contended but that the true intent and meaning of the condition or the conditional limitation, whichever it may be, is the same in both bequests, viz. in respect to the 17,000 lollars, and the one half of the residue of the estate, notwithstanding in the former he uses the copulative conjunction *and*, and in the latter, the disjunctive, *or*, in relation to the contingencies specified. If *and* should be read *or*, then, if there were nothing in the will to the contrary, the surviving grandchildren should take ; for the bequest would come within one or other of the alternatives. They would have the money, if Judith C. Lee died either under twenty-one years of age, or if she were unmarried. And as she died unmarried, they would be entitled under the strict condition of the bequests, if it should be read disjunctively. There is no doubt, that *or* may be read *and*, to effectuate the intent of a testator. *Vid.* cases cited in *Roe dem. Fulham* v. *Wickett*, Willes, 311.

Carpenter
*v.*
Heard.

note.  In the case before us we think it clear, that *or* in the residuary clause, should be read *and*, as is written in the previous bequest.  For otherwise the legacy would be payable to Mary Ann, &c., notwithstanding Judith C. Lee should be married, and notwithstanding she should arrive at full age.  Whereas, if she had married and died under twenty-one years of age, the legacy would have vested, or if she had arrived at the age of twenty-one years and had not been married, the legacy would have vested, according to the manifest intent of the testator.  So that it is perfectly manifest, that Mary Ann, &c., can not maintain their right upon the ground that the contingencies contained in the bequests to them, have happened.  *Jackson* v. *Blanshan*, 6 Johns. R. 54.

But the counsel for the appellees contend, that the bequests to Judith C. Lee were not strictly upon condition, but were conditional limitations ; and that as the bequests to her have failed, she having died before the testator, the limitations over to Mary Ann, &c., took effect immediately ; that the conditional limitations attached to the bequests to Judith, and that as they have failed by reason of her dying before the testator, they are and were avoided ; so that as the bequests to Judith C. Lee are removed, Mary Ann, &c., are to take just as if the bequests had been made absolutely and originally to them.

And the appellees rely upon the case of *Jones* v. *Westcomb*, 1 Eq. Cas. Abr. 245, which arose under the will of Robert Waith, made in 1686, and upon other cases arising under the same will, which continued to be litigated for more than half a century from its date.  Those cases are *Andrews ex dem. Jones* v. *Fulham*, 2 Eq. Cas. Abr. 294, (more fully reported in 8 Vin. 103, *Devise*, *L*, *pl.* 53, and better still in 2 Str. 1093,) and *Gulliver* v. *Wickett*, 1 Wils. 105.

*Jones* v. *Westcomb* was determined by Lord *Harcourt*.  It is stated in 1 Eq. Cas. Abr. 245, very shortly thus ; — " A, possessed of a long term for years, by will devised it to his wife for life, and after her death to the child she was then enceinte with, and if such child died before it came to twenty-one, then he devised one third part of the same term to his wife, her executors and administrators, and the other two thirds to other persons ; and made his wife executrix of his will, and

died. And the bill was brought against her by the next of kin to the testator, to have an account and distribution of the surplus of his personal estate not devised by the will; and two questions were made ; 1. (which is the only one applicable to the case at bar) whether the devise to the wife of one third part of the term, was good, because it happened that she was not enceinte at all, and so the contingency upon which the devise to her was to take place, never happened. And the lord keeper delivered his opinion, that though the wife was not enceinte at the time of the will, yet the devise to her of such third part of the term, was good." No reasons are there assigned for the opinion.

The will is thus stated in *Jones* v. *Fulham*, 8 Vin. 103, *Devise*, *L, pl.* 53. " To my wife for her life, and after her decease, to such child as my said wife is now supposed to be with child and enceinte of, and his heirs for ever ; provided always, that if such child as shall happen to be born as aforesaid, shall die before it has attained the age of twenty-one years, leaving no issue of its body, then the reversion of one third part to my said wife, and the other two thirds to my sisters A and B."

The case of *Gulliver* v. *Wickett* was determined as late as 19 *Geo.* 2, and was respecting a freehold estate under the same will.

The wife recovered notwithstanding she never was with child. And these decisions are supported by many great names and authorities, which may be found in the note to *Fulham* v. *Wickett*, Willes, 315, and other cases cited at the bar.

And so far as we may collect the reasons for the decisions from the numerous cases, they are put upon the following ground ; that the devise to the child was void *ex post facto*, and should be considered just as if it had been void *ab initio* ; as if it had been to a monk, (*Lord Paget's case*, 1 Leon. 194 ; Perk. 567 ; 9 H. 6 23,) or to one not *in rerum naturâ*, (ibid.) with remainder over, in such cases the remainder over takes place immediately.

And Lord *Thurlow*, in *Doo* v. *Brabant*, 3 Bro. C. C. 393, lays down the following rule as a corollary from the cases,

Carpenter
v.
Heard.
that where the prior estate is made to depend upon any de-
scribed event, and the second is to depend upon the determi-
nation of that event, the first is not to be considered as a con-
dition precedent, but, upon its failure, the second estate must
take place." And if this rule should be applied to the case
at bar, the judgment should be for the appellees. Lord *Thur-
low* comments upon many of the cases, and was strongly in-
clined to support the doctrine deduced from *Jones* v. *West-
comb*, but he sent the case to the King's Bench, which de-
cided the other way. That decision was in 1792. 4 T. R.
706. The case is thus abridged in the margin. " A 'be-
queathed money to trustees in trust for B till she should attain
twenty-one, and then to pay the same to her, and if B should
die *under* twenty-one leaving a child or children, then in trust
for such child or children ; but if B should die *under twenty-
one without leaving any child or children*, then in trust for C's
three nieces. B attained twenty-one, married, had two chil-
dren, and died in the lifetime of the testatrix ; B's children
took nothing by the will." B's children were the plaintiffs,
and the defendants were the heirs at law. The cause was
argued elaborately by Shepherd for the plaintiffs, and the case
of *Jones* v. *Westcomb*, and other cases in accordance, were
cited ; but the court stopped the counsel for the defendants
" Nothing (said Lord *Kenyon*) can be more clear than the
words of this will. The devise is to S. Counsell when she
shall attain the age of twenty-one, and if she shall die *under*
twenty-one leaving children, then to those children ; but she did
not die under that age, and therefore nothing can pass to the
grandchildren."

The case of *Calthorpe* v. *Gough*, 4 T. R. 707, note, was
decided at the Rolls in 1789, and is in direct opposition to the
case of *Jones* v. *Westcomb*, and in the opinion of Lord *Thur-
low*, completely subverts it.

It is contended for the appellees, that the decision of the
King's Bench in *Doo* v. *Brabant* was after the revolutionary
war and not binding, but that the case of *Jones* v. *Westcomb*,
and others confirming it, were before the revolution, and so
binding upon the Court here. But we are to decide the case
at bar according to the principles of the common law ; and if

the decisions prior to the revolution go upon ground not tenable by the common law as it is now proved to exist, we are bound to adopt the common law as it is established by the best evidence and reasons which are now presented. Nor is it true that the rule for which the appellees contend, has been universally acknowledged. The case of *Jones v. Westcomb*, as has been already said, was decided by Lord *Harcourt*, without assigning any reasons, and we know the disposition of courts to yield to the authority of great names and cases, without much questioning the ground upon which the decisions were put. But the Court of Common Pleas was opposed to the decisions upon Waith's will, and the reasons are very elaborately and ably and clearly set forth in the opinion of *Willes* C. J., in his Reports, 303, *Fulham v. Wickett*, A. D. 1741. He lays down this proposition, that there is no book or case in which it is said " if the first devise be void, and there be a subsequent devise to another upon a contingency which never happens, that the subsequent devisee shall take the estate, though the contingency never happens, because the first devise is void. He proceeds to show that the devise of Waith to his wife and sisters was upon three contingencies; 1. if a child should happen to be born ; 2. if it should die before twenty-one; and 3. if it should die without issue. If those contingencies should happen, the devise was to take effect. None of them did happen. No child was born ; and the testator had not said what he would have done with the property in that event.

It seems to us, that any rule contradicting that position of Chief Justice *Willes* must be subversive of the right of disposing of property by will. Nobody questions that right, and nobody doubts that it may be exercised according to the will of the owner, although it may be whimsical, inexpedient or capricious, if the intent be clearly manifested and not inconsistent with the requisitions of the law. To say therefore that an estate given to one upon a contingency which does not happen, shall vest notwithstanding, is to defeat and not to execute the will. Whether the provision be reasonable or not, is not the question ; did or did not the testator intend to have the estate vest absolutely, or only upon the happening of certain

Carpenter
v.
Heard.

events, is the matter to be considered. If the event that happened was not foreseen or provided for, but was a case omitted, then the rule is clear that the heir shall take ; for, as has been said, the right of the heir is established by law, unless it be clearly taken away by the will. And it is very difficult to see how the heir can be disinherited by a contingent disposition which never took effect. It is no answer to say, that if the event that has happened had occurred to the mind of the testator, the same reasons which induced him to make the othei disposition of the property on the contingencies which have failed, would have induced him to extend it, so as to include the case or event that has happened. This is no answer, because we cannot judicially know it. He might or he might not have done so. But we do judicially know the established right of the heir, and cannot permit him to be disinherited upon conjecture.

We return to the further consideration of cases which sup-port this course of reasoning. We refer to *Holmes* v. *Cra-dock*, 3 Ves. 317, in 1797. There W. S. gave to the plaintiff as follows ; " and if my son shall die, leaving my wife, without leaving a widow or any child after his death and my wife's, I give and bequeath to my kind friend Francis Holmes £ 500." The testator died in February 1773. The wife in July 1773. The son died in 1794, over twenty-one, without leaving a widow or child. The question was, whether as the contingency of his son's dying without widow or child, in the lifetime of the mother, had not happened, the legatee could take. And it was decided that he could not. And the cases of *Doo* v. *Brabant* and *Calthorpe* v. *Gough* were cited and considered as decisive. The case of *Denn* v. *Bagshaw*, 6 T. R. 512, was also cited ; and we refer to it as a very strong one to prove that the heir shall not be set aside, unless the testator has clearly expressed an intention that he shall be.

The case of *Parsons* v. *Parsons*, 5 Ves. 581, A. D. 1800, was, in principle, like *Doo* v. *Brabant*. It was a bequest of stock to J. H., if she survived the testator's wife three months, and attained the age of twenty-one years, or if she so should survive the wife and be married, then for her sole use apart from her husband : but if she died before twenty-one, leaving lawful

issue, then her children were to take ; but if she should die before three months next after the decease of his wife, under twenty-one and unmarried, then the testator directed that the legacy should sink into the residuum of his personal estate. The legatee J. H. married R. P. after the testator's death, and attained the age of twenty-one, had lawful issue, G. P., who was the plaintiff, but died *before* the wife. The master of the rolls felt bound by the words of the will to decide against the claim of the plaintiff, notwithstanding he believed that if the testator had foreseen the event that happened, he would have given her the funds. *Jones* v. *Westcomb* was cited for the plaintiff.

The case of *Humberstone* v. *Stanton*, 1 Ves. & Beame, 385, was so much like that at bar, that the learned counsel for the appellees were constrained to admit it to be decisive against them, if it were correctly decided. It took place in 1813.

It was a bequest of stock to a son of the testator, on his accomplishing his apprenticeship, " and in case he should die before he accomplished his apprenticeship," then the testator bequeathed the stock to another son and three daughters. The plaintiff was the representative of the residuary legatee. The son completed his apprenticeship and died a year or two before the death of the testator ; and whether, by his death in the lifetime of the testator the bequest over took effect, was the question. And it was held, that this was a lapsed legacy, which fell into the residuum, and that the bequest over could not be maintained.

If in the case at bar Judith C. Lee had arrived at twenty-one years of age, and survived the testator, the legacy would have vested ; but as she died before the testator, it lapsed. So in the case cited, if the son had survived the testator, the bequest would have taken effect ; but as he died before the testator, it lapsed; notwithstanding he had completed his apprenticeship.

It has been argued, that the testator has manifested a general intent, that if Judith did not enjoy the estate, the other grandchildren should have it, and therefore the claim of the heir should be rejected.

So far as a general intent is to be inferred from other parts of the will, independently of the clauses upon which the appellees rely, it would seem that the intent was to give the same sums to the representatives of his son George G. Lee, as he did to the representative of his son William C. Lee. His bounty was bestowed *per stirpes*, and not *per capita*. To each branch he gave 17,000 dollars, and to each branch, one half of the residue of his estate. There were no cross remainders between the different branches, but there were cross remainders between the representatives of George G. Lee. If however it had happened that their legacies had all lapsed, they were not in that event bequeathed to Judith C. Lee, the representative of William C. Lee. Now so far as any argument may be drawn from this mode of disposing of his estate *per stirpes*, it would seem to be reasonably inferred, that if the bequest to Judith should lapse, it should not go over to the other branch, inasmuch as if the bequests to the other branch should lapse, they were not to go over to Judith. At any rate, it would be very difficult to maintain, that by the general intent it was plain that if the bequests to Judith should lapse the representatives of George G. Lee should have them, independently of the bequests upon which the appellees rely.

But if such had been his intent, why did he not say, that if in any event whatsoever the legacy to Judith C. Lee should fail, it should go over to the other grandchildren ? Why trouble himself about contingencies, if he intended to make an absolute bequest over, in case the legacy to Judith should lapse ?

We do not think that much, if any, sound argument or inference can be made by either party, from the general intent.

We must recur then to the particular bequests relied upon by the appellees. The other grandchildren were to take, if Judith died under twenty-one and unmarried. But she died after having attained the age of twenty-one. It is not for the Court to question the expediency of the contingency. It is not for the Court to say that the bequest was absolute, when the testator has said it should be contingent ; or to say that it should vest, when the contingency has not happened.

For the reasons above stated, the Court do order, adjudge and decree, that the appellant is entitled to a share of the lega-

cies bequeathed to Judith C. Lee, to be distributed as lapsed legacies, and that the decree of the probate court be and hereby is reversed ; and that the case be remitted to that court, to be settled according to this decree.

